RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0203p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

GERALDINE BURLEY; CAROLINE BURLEY,
   *Plaintiffs-Appellants/Cross-Appellees,*

 *v.*

JEFFERY GAGACKI; SHAWN REED,
   *Defendants-Appellees/Cross-Appellants,*

BRIAN WOLOSKI; PATRICK BROWNE,
   *Defendants-Appellees.*

Nos. 14-2482/2542

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-10555—Bernard A. Friedman, District Judge.

Argued:  August 4, 2016

Decided and Filed:  August 22, 2016

Before:  SUHRHEINRICH, ROGERS, and GRIFFIN, Circuit Judges.
_____

## COUNSEL

**ARGUED:**  David G. Blake, ROMANO LAW, P.L.L.C., Pleasant Ridge, Michigan, for Appellants/Cross-Appellees.  Anne McClorey McLaughlin, JOHNSON, ROSATI, SCHULTZ & JOPPICH, P.C., Farmington Hills, Michigan, for Appellees/Cross-Appellants.  G. Gus Morris, MCGRAW MORRIS P.C., Troy, Michigan, for Appellee Woloski.  Julie Quiland Dufrane, CITY OF TROY, Troy, Michigan, for Appellee Browne.  **ON BRIEF:**  Stanley I. Okoli, ROMANO LAW, P.L.L.C., Pleasant Ridge, Michigan, for Appellants/Cross-Appellees.  Anne McClorey McLaughlin, JOHNSON, ROSATI, SCHULTZ & JOPPICH, P.C., Farmington Hills, Michigan, for Appellees/Cross-Appellants.  G. Gus Morris, MCGRAW MORRIS P.C., Troy, Michigan, for Appellee Woloski.  Julie Quiland Dufrane, CITY OF TROY, Troy, Michigan, for Appellee Browne.

1

———————

**OPINION**

———————

GRIFFIN, Circuit Judge.   Following a remand for a new trial, *Burley v. Gagacki*, 729 F.3d 610 (6th Cir. 2013), the jury found that defendants did not participate in the police raid that resulted in plaintiffs' claims of excessive force.   Plaintiffs appeal several of the district court's pre-trial rulings regarding the new trial.   Finding none of the issues meritorious, we affirm.

I.

Plaintiffs contend that the law enforcement personnel who executed a search warrant at their house used excessive force upon them when securing the house.   In our prior opinion, we described plaintiffs' allegations as follows:

> [Plaintiffs] were inside their home located at 20400 Greeley Street in the City of Detroit on June 13, 2007, when they heard a loud boom.   When Geraldine Burley came upstairs from the basement, an officer put a gun to her face and said "[g]et on the floor."   She explained that she needed to ease herself to the floor because she had undergone two knee replacements.   At that point, another officer appeared, ordered Geraldine to the floor, and shoved her into the table.   She hit her head, shoulder, neck, and back against the table as she fell to the ground. Another officer walked on top of her body.   When Geraldine's adult daughter, Caroline, heard the loud boom and entered the living room, an officer allegedly put a gun to her face and told her, "[s]top, put your hands up."   The officer threw her against the wall and onto the floor.   When he placed his foot on her back, Caroline hollered, "[g]et your feet out [of] my back. I've had back surgeries." Sometime thereafter, another officer placed his foot on her back, and Caroline again explained that she had undergone back surgeries.

*Id.* at 614.

The offending officers exacerbated the situation by intentionally concealing their identities.   Specifically, "the officers were dressed in black clothing with their faces covered except for their eyes, concealing their identities.   When Geraldine Burley asked for the officers' names, one of the officers was about to write them down when another officer stopped him and said, 'No, just put Team 11.'"   *Id.*   Subsequently, plaintiffs learned that "Team 11" was part of a

vast multi-law enforcement operation involving Wayne County, and federal, state, and municipal law enforcement agents. *Id.* at 613, 614–15. In this regard, it took over two years for Wayne County to disclose an investigation report that purportedly revealed the identities of the officers who executed the search warrant. *Id.* at 614–15. Moreover, the present federal defendants "did not affirmatively assert their lack of involvement in the raid" during "the initial stages of discovery." *Id.* at 615. "It was only in their depositions, after the limitations period had run, that the[y] . . . alleged that they did not participate in the raid of plaintiffs' home but were instead executing a search warrant" nearby. *Id.*

In plaintiffs' previous appeal, we reversed the district court's entry of a directed verdict. *Id.* at 617, 622. In so doing, we expressed our dismay regarding the manner in which the alleged perpetrators concealed their identities to plaintiffs' detriment: "[W]e are not inclined to shield the federal defendants from liability as a reward for their unethical refusal to identify themselves by name and badge number." *Id.* at 622. To this end, we considered, but did not decide, whether this court should adopt a burden-shifting approach similar to the approach taken by the Ninth Circuit in *Dubner v. City & Cty. of San Francisco*, 266 F.3d 959 (9th Cir. 2001), whereby once a plaintiff in an unlawful arrest case meets her burden on the issue of unlawful arrest, the burden of production then shifts to officers to produce evidence of probable cause. This burden-shifting approach, reasoned *Dubner*, "prevent[s] this exact scenario where police officers can hide behind a shield of anonymity and force plaintiffs to produce evidence they cannot possibly acquire." *Id.* at 965 (footnote omitted).

On remand, the district judge declined to apply *Dubner*'s burden-shifting paradigm, reasoning that *Dubner* does not extend beyond false arrest claims. He also refused to disqualify himself from the case, assessed juror expenses related to one of the plaintiffs' non-forthcoming trial delay, and entered several in limine orders. At trial, the jury heard testimony from plaintiffs and the defendant federal officers, and thereafter returned a verdict finding that defendants did not "participate in the raid of plaintiffs' home." Plaintiffs filed a timely notice of appeal,

appealing six orders:   the burden-shifting order; the disqualification order; and four orders regarding in limine motions.[1]

## II.

First, we turn to plaintiffs' primary issue on appeal—the district court's decision not to apply *Dubner*'s burden-shifting regime.  After remand, the Burleys significantly broadened our suggestion, asking the district court not to "shift[] the burden of production onto the federal agents to establish their lack of involvement," *Burley*, 729 F.3d at 613, but rather that the district court "impose the burden of which amongst the Defendants personally inflicted the harm complained of by the Plaintiffs upon the Defendants themselves."  The district court declined, finding *Dubner* inapplicable to excessive force claims.  As a result, plaintiffs contend, the subsequent trial was "toothless."  Plaintiffs' motion addressed the jury instructions—i.e., who bears the burden of persuasion regarding defendants' involvement and the force used; because the correctness of jury instructions is a question of law, we review this issue de novo.  *Gibson v. City of Louisville*, 336 F.3d 511, 512 (6th Cir. 2003).

In *Dubner*, the plaintiff claimed San Francisco police officers falsely arrested her at a demonstration.  266 F.3d at 962–64.  Because she was unable to identify the officers who arrested her, she filed § 1983 false arrest claims against all the officers listed on her arrest report. *Id.* at 963–64.  Apparently, the City of San Francisco had a practice of listing officers who arrived first on scene as arresting officers—even if they did not participate in the arrest—in order to "deliberately . . . frustrate the efforts of potential plaintiffs in false arrest cases to establish lack of probable cause." *Id.* at 964–65.  After a bench trial, the district court found that the plaintiff could not prove her arrest's unlawfulness based upon her inability to conclusively identify her arresting officers. *Id.* at 964.

The Ninth Circuit reversed, relying upon cases that shift the burden of production regarding the existence of probable cause to a defendant upon the showing of a warrantless arrest. *Id.* at 965.  In such instances, the Ninth Circuit reasoned, "[i]f the defendant is unable or

---

[1]Defendants Gagacki and Reed also cross-appeal a portion of the district court's jury instructions. However, we need not address the cross-appeal given our ruling that plaintiffs' appeal is not meritorious. *Martin Cty. Coal Corp. v. Universal Underwriters Ins. Co.*, 727 F.3d 589, 598 (6th Cir. 2013).

refuses to come forward with any evidence that the arresting officers had probable cause and the plaintiff's own testimony does not establish it, the court should presume the arrest was unlawful." *Id.* "This minimal burden shifting forces the police department, which is in the better position to gather information about the arrest, to come forward with some evidence of probable cause. . . . By shifting the burden of production to the defendants, we prevent this exact scenario where police officers can hide behind a shield of anonymity and force plaintiffs to produce evidence that they cannot possibly acquire." *Id.* (footnote omitted).

On appeal, plaintiffs present an expansion and variation on *Dubner*. Specifically, plaintiffs claim that the district court erred in refusing to shift the burden of persuasion to defendants regarding *who* amongst them committed excessive force during the raid, and thus erred when it instructed the jury that plaintiffs "must prove by a preponderance of the evidence that each of the defendants was personally involved in the conduct that the plaintiffs complain about." Plaintiffs contend that the jury instructions "impose[d] an insurmountable burden." Accordingly, they argue equity dictates that defendants bear the burden of persuasion in order to give meaning to the principle that "no man may take advantage of his own wrong."[2] We disagree.

First, *Dubner*'s burden-shifting paradigm, while not unique to the Ninth Circuit,[3] is contrary to our approach to false arrest claims. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). We have consistently held that "[i]n order for a wrongful arrest claim to succeed . . . , *a plaintiff must prove that the police lacked probable cause.*" *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (emphasis added). Indeed, we have upheld the dismissal of a false arrest claim where a plaintiff was unable to "clearly identify" the police officer who made the arrest because she was

---

[2]To the extent plaintiffs rely upon the equitable estoppel doctrine discussed by the Ninth Circuit in *Estate of Amaro v. City of Oakland*, 653 F.3d 808 (9th Cir. 2011), they have forfeited this argument by virtue of not having raised it below in their motion to shift the burden, *United States v. Archibald*, 589 F.3d 289, 295 (6th Cir. 2009), and have abandoned it by not explaining on appeal how the doctrine applies in this case. *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014).

[3]*See, e.g., Dubner*, 266 F.3d at 965 (citing *Gilker v. Baker*, 576 F.2d 245, 246 (9th Cir. 1978); *Martin v. Duffie*, 463 F.2d 464, 467 (10th Cir. 1972); *Patzig v. O'Neil*, 577 F.2d 841, 849 n.9 (3d Cir. 1978); *Dellums v. Powell*, 566 F.2d 167, 175–76 (D.C. Cir. 1977)).

"unable to prove which defendant had violated her rights." *Thacker v. City of Columbus*, 328 F.3d 244, 258–59 (6th Cir. 2003). *Dubner*, seeing the burden of proof differently on probable cause, makes it distinguishable.

Second, the Ninth Circuit has subsequently cabined *Dubner*'s holding to wrongful arrest claims. In *Johnson v. Bay Area Rapid Transit District*, 724 F.3d 1159 (9th Cir. 2013), our sister circuit concluded that a district court erred in a Fourth Amendment prolonged detention case when it relied upon *Dubner* to shift the burden to a police officer to "demonstrate he had nothing to do with [plaintiffs'] prolonged detentions . . . in order to escape liability." *Id.* at 1173. In *Johnson*, the Ninth Circuit distinguished *Dubner* because "the success of Dubner's claim for unlawful arrest depended on her being able to show that she was arrested without probable cause." *Id.* at 1172. That is, "because the burden fell to the police [under Ninth Circuit precedent] to demonstrate they had probable cause to arrest Dubner, then the burden also fell to the police to come up with the identity of the officer who actually made the arrest—without it, there would be no way to demonstrate that the officer had the necessary probable cause." *Id.* at 1173. But in claims that do not require a probable cause showing, the Ninth Circuit held that burden-shifting is inapplicable:

> *Dubner*, however, establishes only that we will find the police lack probable cause to make an arrest—and therefore that the arrest is unlawful—if the police are unable to identify who made the arrest, or why. *But the issue we must evaluate here is not whether* [*the officer*] *had probable cause to arrest* [*the plaintiffs*]; *it is whether* [*the officer*] *was at all responsible for their prolonged detentions.*

*Id.* at 1173 (emphasis added).[4]

In the present case, as in *Johnson*, the success of plaintiffs' excessive force claims does not rise or fall upon a probable cause determination. The Burleys offer no counter to *Johnson*, and instead direct us to the pre-*Johnson* case of *Rauen v. City of Miami*, No. 06-21182-CV, 2007

---

[4]Other courts have also declined to extend *Dubner* beyond the probable cause/no probable cause framework of false arrest claims. *See, e.g.*, *Taylor v. Brockenbrough*, No. CIV. A. 98-6419, 2001 WL 1632146, at *2 n.4 (E.D. Penn. Dec. 20, 2001) ("Unlike *Dubner*, this action does not involve a claim for unlawful arrest, but rather a claim for excessive force, which does not involve a showing of probable cause. As such, the burden shifting schemata employed by the Ninth Circuit in *Dubner* is not applicable to the present case."); *see also Arroyo v. Cal. Dep't of Justice*, 2:08-cv-01493-GEB-KJM, 2010 WL 1798444, at *7–8 (E.D. Cal. May 3, 2010) (similar) (excessive force claim); *Sheikh v. Morales*, No. 3:05CV495(PCD), 2006 WL 2223943, at *5 (D. Conn. July 31, 2006) (similar) (excessive force claim).

WL 686609 (S.D. Fla. Mar. 2, 2007). That excessive force matter—involving officers whom plaintiffs could not identify due to the officers all being identically dressed in riot gear—is distinguishable on account of its procedural posture: *Rauen* addressed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id.* at *3–4. Here, plaintiffs' complaint advanced beyond that stage, through discovery and summary judgment, and to trial, where one of the jury's functions was to assess witnesses' credibility. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Having heard two differing versions of evidence concerning defendants' presence at their house, the jury disagreed with plaintiffs.

Third, plaintiffs' proposed burden-shifting would stand § 1983/*Bivens* liability jurisprudence on its head. That case law teaches that in order to impose individual liability upon a law officer for engaging in unconstitutional misconduct, it is a plaintiff's burden to specifically link the officer's involvement to the constitutional infirmity; a plaintiff must be able to identify with particularity the individual who engaged in the alleged misconduct because an individual "is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *see also Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (individual liability for excessive force means the plaintiff must show that the defendant was "personally involved" in the use of excessive force and "[e]ach defendant's liability must be assessed individually based on his actions"). Under plaintiffs' proposal, a law officer who raises an "I wasn't there defense" can only *avoid* constitutional liability by mustering evidence of who was there instead, and by implication, who was responsible for the alleged excessive force. In other words, once a plaintiff has put forth some evidence of an officer being present at a raid in which a constitutional violation has allegedly occurred, that officer is presumed to be liable if he claims he was not there, unless he proves who was and who did it. Even *Dubner* does not go this far. 266 F.3d at 965 ("The plaintiff still has the ultimate burden of proof."). And this is contrary to the general rule we highlighted in the prior appeal: "[M]ere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability." *Burley*, 729 F.3d at 620 (citation omitted).

For these reasons, we hold that the district court did not err in refusing to extend and expand *Dubner* as plaintiffs requested.[5]  In so doing, we do not condone the behavior of those individuals who perpetrated the alleged excessive force.  We are cognizant of the fact that at this juncture our decision leaves plaintiffs without a remedy because all other defendants (state, county, and local) have been dismissed.  However, at the second trial, plaintiffs had the opportunity to present evidence as to why they believed *these* federal defendants participated in the raid and committed excessive force.  The jury simply did not credit their evidence when they found to the contrary.

### III.

Next, plaintiffs claim that they are entitled to another new trial because the district judge erred in denying their motion for disqualification.  Under 28 U.S.C. § 455(a), (b)(1), a federal judge must disqualify himself from a proceeding where "his impartiality might reasonably be questioned" or "[w]here he has a personal bias or prejudice concerning a party."[6]  The statute is "not based on the subjective view of a party," *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993) (citation omitted), and rather imposes an objective standard:  a judge must disqualify himself "where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013) (citation omitted).  The burden is on the moving party to justify disqualification. *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999).  We review a judge's decision on a motion to disqualify for an abuse of discretion. *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005).

A judge's prejudice or bias may stem from either personal or extrajudicial sources, or arise during the course of current or prior proceedings. *Liteky v. United States*, 510 U.S. 540, 555 (1994) (brackets omitted); *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012).  The

---

[5]Our rejection of plaintiffs' proposed rule that would shift the burden of persuasion to a defendant who does not point the finger at someone else does not mean that we would reject a lesser burden shift in different circumstances—such as if a defendant comes forward with no evidence at all of his nonparticipation.  Because the defendants in this case did produce such evidence in the form of their own testimony (and the testimony of others), we have no occasion to address the merits of such a less onerous shift of the burden of production.

[6]The Due Process Clauses of the Fifth and Fourteenth Amendments also guarantee an unbiased judge. *See generally Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016); *see also* 28 U.S.C. § 144.

Burleys rely solely upon the latter—events during and after plaintiffs' first trial—to support their claim for disqualification. In this circumstance, the Supreme Court has made clear that such a claim faces an uphill battle. *See Liteky*, 510 U.S. at 555–56. "Prejudice or bias in this context means 'a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it rests upon knowledge that the subject ought not possess . . . , or because it is excessive in degree . . . .'" *Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006) (quoting *Liteky*, 510 U.S. at 550) (omissions in original)). "Also not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings." *Liteky*, 510 U.S. at 551.

According to the Burleys, the district court demonstrated "overt hostility" toward them from the start of the case. They direct us to several occasions during and after the first trial as evidence of partiality, as well as point to the district court's decision to assess juror expenses for failing to timely inform the court of one of the plaintiffs' inability to attend the start of the second trial (an order from which plaintiffs did not appeal). Plaintiffs do not, however, make any issue of the district court's conduct during the second trial.

Some of plaintiffs' claims of alleged misconduct are not supported by the record. For example, plaintiffs complain that the district court told plaintiffs' counsel that he was asking repetitious questions to defendant Gagacki regarding the drafting of search warrants "when there was no evidence of such." A review of the testimony reveals there was such evidence. Nor does the record reflect that the court improperly took breaks during witness testimony—it does not reveal any instance of witnesses being "hard-pressed to supply answers" during their questioning, plaintiffs do not point to any specific testimony showing this and did not object to the district court taking a break.[7] The same is true with respect to plaintiffs' contention that the district court interrupted questioning "*ad hoc* . . . with no clear purpose." Moreover, a district court has the duty to "see that the issues are not obscured and that the testimony is not misunderstood," and thus may interject itself as appropriate. *United States v. Slone*, 833 F.2d 595, 597 (6th Cir. 1987).

---

[7]And as the district court properly noted, a district court's "decision to permit breaks at certain junctions during the trial testimony merely reflects 'a judge's ordinary efforts at courtroom administration' and are 'immune' from aspersions of bias or prejudice." (Quoting *Liteky*, 510 U.S. at 556) (bracket omitted).)

Other examples fail to meet *Liteky*'s "extreme" bias or prejudice standard because they were well within the norms of trial management—instructing plaintiffs' counsel to use the question and answer format during cross-examination, reminding a witness to testify truthfully, refusing to allow a witness without personal knowledge of a document to testify about the document, and questioning the merits of plaintiffs' case-in-chief. 510 U.S. at 551, 555; *see also United States v. Adams*, 722 F.3d 788, 837–38 (6th Cir. 2013) ("[T]he district court judge's statements amount to criticism and disapproval of defendants and other coconspirators, not deep-seated favoritism or antagonism."); *United States v. Caraway*, 411 F.3d 679, 683 (6th Cir. 2005) ("[A] district court must exercise reasonable control over the mode and order of presenting evidence with the goal that the presentation be effective for ascertaining the truth.") (citing Fed. R. Evid. 611(a)); *United States v. Morrow*, 977 F.2d 222, 226 (6th Cir. 1992) ("The court's remark concerning the defendants' duty to tell the truth is not only free of bias, but is consistent with the law.").

The remaining alleged misconduct raised by plaintiffs—granting a bill of costs after the first trial, assessing juror expenses, and directing a verdict in defendants' favor after having denied summary judgment—fall within *Liteky*'s admonition that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." 510 U.S. at 555; *see also id.* at 551 ("Also not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.").

In sum, plaintiffs have "done nothing more than make conclusory allegations to support [their] claim that the district court was biased against [them.]" *Sypher*, 684 F.3d at 628. The district judge did not err in denying plaintiffs' motion for disqualification.

## IV.

Next, we turn to plaintiffs' assignment of errors regarding several motions in limine. We review a district court's evidentiary rulings for an abuse of discretion; an abuse of discretion occurs when the district court "relies on clearly erroneous findings of fact, improperly applies the

law, or employs an erroneous legal standard," *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012) (internal quotation marks omitted), or when we are "firmly convinced that a mistake has been made, *i.e.*, when we are left with a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Heavrin*, 330 F.3d 723, 727 (6th Cir. 2003) (citation omitted). Even if the district court's evidentiary ruling was erroneous, it is error requiring reversal "only if it was not harmless; that is, only if it affected the outcome of the trial." *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 510 (6th Cir. 2013). In the converse, if an evidentiary error did not "substantially sway[]" the jury, *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011), or "had but very slight effect," *Kotteakos v. United States*, 328 U.S. 750, 764 (1946), and thus did not "materially affect[]" the verdict, it is not a basis for reversal. *United States v. Trujillo*, 376 F.3d 593, 611 (6th Cir. 2004).

A.

Before the first trial, the Burleys sought to preclude evidence regarding their receipt of social security disability benefits and participation in prior negligence claims and lawsuits. The district court denied both motions, agreeing with defendants that both were relevant to damages (plaintiffs apparently alleged injuries in this lawsuit similar to those for which they are receiving disability benefits), and that their prior negligence actions also went to their credibility.

Plaintiffs appealed these rulings during the prior appeal, which we found to be moot: they "had no bearing on the outcome of the proceedings because the evidence was never introduced at trial." *Burley*, 729 F.3d at 620–21. Upon remand, and in advance of the second trial, plaintiffs renewed their motions. The district court found the law of the case doctrine precluded any different result.

The second trial produced some (albeit opaque) evidence regarding plaintiffs' receipt of disability benefits and their prior litigation experience. On the former, Geraldine Burley admitted being on disability and Caroline Burley testified that she no longer works because she is "disabled" due to an injury at work (from which she receives workers' compensation benefits). The record contains no other information about these benefits, including whether they are social security or some other type of contractually provided benefits. As to the latter, Geraldine Burley

answered questions regarding her prior litigation experience.  This included being impeached for having denied being a party to litigation in her interrogatory answers—she admitted at trial that she had filed a lawsuit "against the Marriott Corporation for a slip and fall that occurred in a bathroom at the Courtyard by Marriot" and that it was resolved for $45,000.  Geraldine also admitted that she filed a slip-and-fall lawsuit against Kmart, which settled for $20,000.  This is the extent to which plaintiffs' prior litigation was discussed during proofs.  At closing, defense counsel brought plaintiffs' credibility front and center, expressly referencing the falsity of Geraldine's interrogatory answers.

Preliminarily, we reject defendants' contention that the law of the case doctrine precludes our review.  "Under the law of the case doctrine, findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." *Dixie Fuel Co., LLC v. Dir., Office of Workers' Comp. Programs*, 820 F.3d 833, 843 (6th Cir. 2016).  Application of this doctrine is "limited to those questions necessarily decided in the earlier appeal." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997).  "[T]he phrase 'necessarily decided' . . . describes all issues that were 'fully briefed and squarely decided' in an earlier appeal." *Vander Boegh*, 772 F.3d at 1071 (citation omitted).  This doctrine does not govern our result— we found the issue moot given the evidence precluded was not presented, and thus we did not "squarely decide" the merits of the district court's rulings.

With that said, there was no error requiring reversal.  First, the Burleys have abandoned this issue on appeal.  They have submitted the same brief language on this issue that they did during the last appeal—down to an incomplete sentence contained in both briefings.  They thus make no mention of the district court's application of the law of the case doctrine, the evidence presented at the second trial, and, most importantly, why this evidence affected the trial's outcome.  Such a failure to develop a cogent argument constitutes abandonment. *See id.* at 1063.

Second, assuming plaintiffs have not abandoned the issue, there is no argument to be made that the evidence adduced at trial affected the outcome of the trial.  It is not clear that evidence regarding plaintiffs' receipt of social security disability insurance benefits was even presented to the jury.  Moreover, to the extent one could infer such a connection, there is no indication that this evidence (or that regarding Geraldine Burley's prior actions) affected the

outcome of trial—the jury's verdict that defendants were not present during the execution of the warrant. This lack of a "material[] affect" is not a basis for reversal. *Trujillo*, 376 F. 3d at 611.

B.

Before the first trial, the district court found that the search of plaintiffs' home "was done pursuant to a valid warrant." Plaintiffs gave up on contesting this issue during the first appeal. *Burley*, 729 F.3d at 619 ("Plaintiffs no longer contest the validity of the search warrant."). After remand, defendants Gagacki and Reed moved to preclude any argument challenging the validity of the underlying search warrant based on the law of the case doctrine. The district court agreed.

Plaintiffs argue that this was in error because they made a strategic decision not to pursue that argument in the first appeal in order to "focus[] . . . on issues calculated to win them a new trial." Although plaintiffs were partially successful in their first appeal, their success in obtaining a trial was at the expense of any claim regarding the viability of the warrant. "The law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997). Thus, "[a] party who could have sought review of an issue or a ruling during a prior appeal is deemed to have waived the right to challenge that decision thereafter, for '[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.'" *Id.* (citation omitted); *see also United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000). This doctrine exists for good reason—it discourages "perpetual litigation" and promotes finality in proceedings by requiring that parties seek review of a claim in the first appeal. *McKinley*, 227 F.3d at 719.

Accordingly, plaintiffs' strategic decision to no longer contest the warrant's viability during the first appeal precluded plaintiffs from making it an issue during subsequent proceedings.

C.

The district court also precluded evidence as to defendant Browne's (1) having a § 1983 excessive force claim filed against him that did not conclude in an adverse judgment and (2) having been disciplined for his handling of a claim involving a citation for accepting false identification from minors, concluding both were not relevant and more prejudicial than probative. Plaintiffs did not appeal this ruling during the first appeal.

Browne renewed his motion upon remand. The district court again granted the motion under the law of the case doctrine. On appeal, the Burleys contend the prior excessive force claim is relevant to the extent the evidence precluded was the "very same sort of conduct currently at issue."[8] Because plaintiffs did not raise this argument in the prior appeal, this challenge suffers the same fate as their search warrant challenge. *Adesida*, 129 F.3d at 850.

V.

Finally, the Burleys' briefing raises two issues over which we do not have jurisdiction. Federal Rule of Appellate Procedure 3(c)(1)(B) requires the parties to "designate the judgment, order, or part thereof being appealed" in the notice of appeal. "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." *Smith v. Barry*, 502 U.S. 244, 248 (1992); *see also Isert v. Ford Motor Co.*, 461 F.3d 756, 759 (6th Cir. 2006) (describing Rule 3's requirements as "mandatory and jurisdictional in nature"). By enacting this provision, "Congress has limited this Court's appellate review to issues designated in the notice of appeal." *United States v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001). Accordingly, if an appellant "chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only the specified issues may be raised on appeal." *McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir. 1985).

---

[8]Other than in a point heading, plaintiffs' briefing makes no mention of the exclusion of Browne's prior discipline. This argument is thus not properly before us. *White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 850 (6th Cir. 2010).

Here, although plaintiffs' notice of appeal lists six specific orders, it does not appeal the district court's assessment of juror expenses or its resolution of the Burleys' *Batson* challenge. These omissions strip this court of jurisdiction, and we dismiss these claims.

## VI.

For these reasons, we affirm in part, and dismiss in part.