**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 20a0587n.06

No. 20-1196

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| JOHN P. HANKINS, | ) | **FILED** |
| Plaintiff-Appellant, | ) | Oct 16, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| RAYMOND GUZALL III, et al., | ) | |
| Third-Party Appellants, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| CITY OF INKSTER, MICHIGAN, et al., | ) | |
| Defendants, | ) | OPINION |
| | ) | |
| BARRY A. SEIFMAN, et al., | ) | |
| Third-Party Plaintiffs-Appellees. | ) | |

**BEFORE: McKEAGUE, GRIFFIN, and BUSH, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** Raymond Guzall appeals the district court's Amended Order Granting in Part and Denying in Part Guzall's Motion [184] and Authorizing the Dispersal of Funds in the Clerk of the Court's Interest-Bearing Account. This order amended the district court's prior order that adopted the magistrate judge's Report and Recommendation, overruled Guzall's objection, and granted Seifman's Motion for Disbursement of Funds Held in an Interest Bearing Account. Most of the claims raised by Mr. Guzall and Raymond Guzall III, P.C.[1] have already been decided by a prior panel of this court. Those that have not are largely frivolous. For the following reasons, we **AFFIRM** the judgment of the district court.

---

[1] For the sake of clarity, we refer to the Third-Party Appellants as "Guzall" and the Third-Party Plaintiffs-Appellees as "Seifman."

**I.**

Guzall's claims arise from a longstanding dispute with his former law partner, Barry Seifman, over a contingency fee earned from the representation of John Hankins in an employment discrimination action against the City of Inkster ("the City") and the City's Police Chief. *Hankins v. City of Inkster (Hankins I)*, 768 F. App'x 304, 305 (6th Cir. 2019). Guzall contends that, while representing Hankins, Guzall was forced to leave his partnership with Seifman in February 2012 upon discovery of Seifman's alleged involvement in illegal and unethical activities. *Id.* Seifman denies Guzall's allegations of wrongdoing. *Id.* When Guzall collected a contingency fee from Hankins's settlement with the City, Seifman intervened against Hankins, the defendants, and non-party Guzall. *Id.* The district court held the case in abeyance while a contemporaneous Michigan state court proceeding between Seifman and Guzall determined whether Guzall improperly took client files when he left the firm and whether Seifman engaged in criminal and unethical conduct. *Id.* The Michigan state court held that Guzall "had improperly taken the client files but that no other claims by either party remained because Guzall and Seifman had accepted their 'case evaluations' (alternative-dispute-resolution decisions)." *Id.* After the Michigan Court of Appeals affirmed, and the Michigan Supreme Court denied leave to appeal further, the district court reopened the case. *Id.*

The magistrate judge conducted a hearing to determine six issues: "(1) the Firm's shareholder agreement between Seifman and Guzall; (2) when Guzall quit the Firm and when he told Seifman; (3) when and how Hankins told Seifman he was firing the Firm; (4) when and how Hankins retained Guzall; (5) when and how Guzall took the Hankins file from the Firm; and (6) the hours Guzall and Seifman each spent on the case, their hourly rates, and whether Seifman was

entitled to compensation in quantum meruit." *Id.* at 305–06. The magistrate judge prohibited any discussion of Guzall's allegations of Seifman's misconduct. *Id.* at 306.

Following the hearing, the magistrate judge issued a Report and Recommendation on December 8, 2017. *Id.* at 306. The district court, in turn, "thoroughly address[ed] and overrul[ed] Guzall's objections" to the Report and Recommendation before adopting it as its final order. *Id.* at 306.

Guzall appealed the district court's order, and this court affirmed the order on March 22, 2019. *Id.* at 305. Guzall then filed a petition for a writ of certiorari with the U.S. Supreme Court, which was denied. On November 14, 2019, the magistrate judge issued another Report and Recommendation (the "November 14, 2019 R&R"), recommending that the district court grant Seifman's Motion for Order for the Withdrawal of Funds Held in an Interest-Bearing Account and disburse the funds pursuant to the district court's previous order. *Hankins v. City of Inkster*, No. 09-13395, 2019 WL 7882571, at *4 (E.D. Mich. Nov. 14, 2019). The district court again addressed and overruled Guzall's objections before adopting the November 14, 2019 R&R as its final order on January 10, 2020. *Hankins v. City of Inkster*, No. 09-13395, 2020 WL 113780, at *3–4 (E.D. Mich. Jan. 10, 2020).

## II.

The bulk of Guzall's claims have already been decided by the prior Sixth Circuit panel. Thus, the law of the case doctrine largely controls. As to his other claims, the district court did not abuse its discretion in refusing to sanction Seifman, and we reject Guzall's claims that the magistrate judge acted with bias. Nevertheless, we will not impose sanctions on Guzall.

**A. Law of the Case Doctrine**

Guzall's claims regarding the November 14, 2019 R&R, the interpretation of the Shareholder Agreement, and the determination of Guzall's hourly rate are controlled by the law of the case doctrine. This principle dictates that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *accord Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017). The law of the case doctrine prevents the "reconsideration of identical issues" decided "either explicitly or by necessary inference from the disposition" at a prior stage of litigation. *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (first quoting *Petition of U.S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir. 1973); then quoting *Coal Res., Inc. v. Gulf & W. Indus.*, 865 F.2d 761, 766 (6th Cir. 1989), *as amended on denial of reh'g*, 877 F.2d 5 (6th Cir.)). An appellate court may reconsider a prior ruling "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Id.*

The goal of this doctrine is to "enforce a district court's adherence to an appellate court's judgment." *Miller*, 866 F.3d at 390. We review a lower court's application of the law of the case doctrine for abuse of discretion. *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) (citing *Pac. Emps. Ins. Co. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 398 (6th Cir. 2002)). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *Hayes v. Comm'r of Soc. Sec.*, 895 F.3d 449, 452 (6th Cir. 2018) (quoting *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 497 (6th Cir. 2014)).

4

### 1. The November 14, 2019 R&R

Guzall argues that the November 14, 2019 R&R shows that the district court lacked subject-matter jurisdiction over the interpretation of the Shareholder Agreement, as well as personal jurisdiction over Guzall or Seifman, because the magistrate judge should only have decided Seifman's claimed lien. Guzall's purported basis for this assertion is that a minute entry from February 17, 2012 stated that the "lien issue [was] to be decided later," even though the magistrate judge issued the November 14, 2019 R&R upon the district court's referral of the Motion for Order for the Withdrawal of Funds Held in an Interest-Bearing Account—over seven years after the minute entry. Moreover, an appellate court need not explicitly state that a trial court had jurisdiction over a particular claim or over the relevant parties when it decides a case. Rather, "[e]very court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter." *Stoll v. Gottlieb*, 305 U.S. 165, 171–72 (1938). A party cannot claim that the district court should reconsider an issue previously decided by the appellate court simply because the appellate court "did not explicitly assert jurisdiction on the record." *Keith v. Bobby*, 618 F.3d 594, 600 (6th Cir. 2010) (holding that the law of the case doctrine prevented a district court from reconsidering whether a habeas corpus petition was "second or successive" because the appellate court, in previously deciding so, had implicitly asserted its jurisdiction).

Guzall likewise claims that the magistrate judge erred by determining the division of fees between Guzall and Seifman in the November 14, 2019 R&R, rather than deciding plaintiff John Hankins's April 26, 2012 motion to determine Seifman's claimed lien. The November 14, 2019 R&R recommended that the settlement funds be distributed according to the May 16, 2018 district court order and judgment. The Sixth Circuit had already affirmed that order and judgment. *Hankins I*, 768 F. App'x at 307–08. Beyond the frivolity of suggesting that the magistrate judge

erred by failing to address a motion from seven years earlier, Guzall's claim fails because the magistrate judge did not abuse its discretion by adhering to the decision of both the district court and the Sixth Circuit. *See Miller*, 866 F.3d at 389–90.

### 2. Interpretation of the Shareholder Agreement

Guzall contests the Sixth Circuit's application of Michigan law when it interpreted the Shareholder Agreement. More specifically, Guzall seeks to relitigate the interpretation of the Shareholder Agreement on appeal after the district court complied with the directions of the March 22, 2019 Sixth Circuit decision in *Hankins I*.

None of the exceptions to the law of the case doctrine apply. *See Hanover Ins.*, 105 F.3d at 312. We will not disturb this Court's prior interpretation of the Shareholder Agreement. The district court did not abuse its discretion in abiding by the Sixth Circuit's interpretation.

### 3. Determination of Guzall's Hourly Rate

Finally, Guzall argues that the magistrate judge improperly determined his hourly rate. Guzall posits that he should not have been paid an hourly rate based on quantum meruit, but, even if determining his hourly rate had been appropriate, it should have been calculated based on his 2018 hourly rate.

The district court addressed this argument when it adopted the December 8, 2017 Report and Recommendation, explaining that the magistrate judge had informed Guzall and Seifman that testimony at the evidentiary hearing would be limited to, among other issues, the time Guzall and Seifman spent on the case and their hourly rates charged. We affirmed this decision: "[T]he district court did not abuse its discretion in conducting the evidentiary hearing or determining his hourly rate and costs." *Hankins I*, 768 F. App'x at 307. The November 14, 2019 R&R explained that the law of the case doctrine precludes Guzall from relitigating his hourly rate. We agree.

**B. The District Court's Refusal to Sanction Seifman**

Guzall argues that the district court erred in failing to sanction Seifman for allegedly violating the district court's March 8, 2016 and June 15, 2018 orders. Guzall further contends that Seifman engaged in various forms of misconduct throughout litigation, which he claims warranted a sanction of default judgment.

We review a district court's interpretation and enforcement of its own orders under an abuse-of-discretion standard. *Satyam Comput. Servs., Ltd. v. Venture Global Eng'g, LLC*, 323 F. App'x 421, 430 (6th Cir. 2009). We recognize that the district court is "in the best position to interpret its own order." *Id.* (citation omitted). We likewise review a district court's decision regarding sanctions under 28 U.S.C. § 1927 and for bad faith under an abuse-of-discretion standard. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 55 (1991) (describing a federal court's inherent power to sanction a party upon a finding of bad faith); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510, 525 (6th Cir. 2002). To impose sanctions, a district court must make a specific finding of bad faith. *Eaton Aerospace, L.L.C. v. SL Montevideo Tech., Inc.*, 129 F. App'x 146, 154 (6th Cir. 2005). Furthermore, a district court need not explain its reasoning for abstaining from imposing sanctions. *Id.* at 153 (citing *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 417 (6th Cir. 1992)).

On March 8, 2016, the magistrate judge issued an order providing that "no further pleadings . . . be filed in this case without first obtaining leave of the court." On June 15, 2018, the district court ordered a continuance of the escrow of attorney's fees until "final determination of the appeal in this case," pursuant to the parties' June 14, 2018 Stipulation for Entry of Order to Continue Escrow of Funds. Seifman filed two motions following these orders: a Motion for Order

for the Withdrawal of Funds Held in an Interest-Bearing Account on May 31, 2018 and a Motion for the Withdrawal of Funds Held in an Interest-Bearing Account on June 11, 2019.

Guzall argues that the district court abused its discretion by failing to sanction Seifman with an entry of default judgment. In the November 14, 2019 R&R, the magistrate judge rejected this argument, explaining that the March 8, 2016 order "was clearly and solely directed at pleadings and motions *prior to* [the December 8, 2017 R&R] on the underlying motion to determine the division of attorney fees." The magistrate judge indicated that Guzall must have understood this meaning of the March 8, 2016 order, as Guzall himself filed objections to the original Report and Recommendation without seeking leave of the court. Indeed, the district court's order explained that "the only reasonable interpretation of the Magistrate Judge's Order was that further filings were not permitted while he decided the attorneys fee issue . . . There would be no reason for a Magistrate Judge, who had been referred a few specific motions, to take on the role of screening all future motions to be filed on a case." Moreover, Guzall's claim that Seifman violated the June 15, 2018 order is baseless, as Seifman filed the June 11, 2019 motion after the denial of Guzall's petition for rehearing en banc, and Guzall did not move to stay the Sixth Circuit's mandate pending a petition for writ of certiorari in the U.S. Supreme Court pursuant to Federal Rule of Appellate Procedure 41(d)(1). Thus, the district court did not abuse its discretion in refusing to sanction Seifman for filing the May 31, 2018 and June 11, 2019 motions.

Finally, Guzall accuses Seifman of numerous instances of fraud and argues that the district court again erred in refusing to impose a sanction of default judgment against Seifman. Even if Guzall's claims had any merit, the district court made no finding of bad faith on Seifman's part, and it is not required to explain why it chose not to impose sanctions. *See Eaton Aerospace*, 129 F. App'x. at 153–54.

**C. Guzall's Due Process Claims and Allegations of Impropriety**

Guzall ascribes the district court's decisions to impropriety and bias, culminating in a violation of due process. Notably, Guzall never moved to disqualify the magistrate judge or the district court judge. He merely argued that the district court judge should have rejected the November 14, 2019 R&R because the magistrate judge "did not avoid the appearance of impropriety, [and] abused his discretion." R. 179 at PageID 4114.

By statute, a judge must recuse himself "where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016) (citation omitted); *see* 28 U.S.C. § 455(a). But a judge's failure to recuse rarely amounts to a denial of due process. *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876 (2009) ("As the Court has recognized . . . 'most matters relating to judicial disqualification [do] not rise to a constitutional level.'") (quoting *FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948)). "Due process will require recusal when a judge has 'a direct, personal, substantial, pecuniary interest in a case,' and when, as an objective matter, 'experience teaches that the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable.'" *United States v. Prince*, 618 F.3d 551, 561 (6th Cir. 2010) (quoting *Caperton*, 556 U.S. at 876–77).

Guzall contends that the magistrate judge's adherence to the Sixth Circuit's opinion constitutes a violation of due process. Guzall further argues that the magistrate judge's statement that he had not read Guzall's petition for writ of certiorari before the U.S. Supreme Court and his expression of doubt that the petition would be successful evince the magistrate judge's bias. Guzall also considers the magistrate judge's response to his objection to Seifman's alleged violation of the March 8, 2016 order to be improper: the magistrate judge noted that Guzall himself had filed

objections to the December 8, 2017 Report and Recommendation, although Guzall claims that the general invitation to submit objections constituted "leave of the court," in addition to rescinding the March 8, 2016 order for the sake of clarity. These actions do not amount to a display of bias or impropriety or to a denial of due process. *See Burley*, 834 F.3d at 616; *Prince*, 618 F.3d at 561.

Lastly, Guzall requests that a forensic exam of the audio recording and video recording "if such exists" from the October 22, 2019 hearing be conducted to determine if they have been altered. He claims that an expression of doubt over the success of his petition for writ of certiorari before the Supreme Court was omitted from the transcript. This claim is frivolous. Even a casual reading of the transcript shows that it includes the magistrate judge's understandable (and later proven accurate) belief that the Supreme Court would deny Guzall's petition. R. 194, Mot. for Disbursement of Funds Hr'g Tr., at PageID 33. And even if an omission existed, it would not be enough to lead a reasonable person to question the magistrate judge's impartiality, and it certainly would not amount to a denial of due process. *See Burley*, 834 F.3d at 616; *Prince*, 618 F.3d at 561.

Guzall offers no evidence of bias on the magistrate judge's, the district court judge's, or the Sixth Circuit's part. We therefore **AFFIRM** the district court's finding that Guzall suffered from no bias or impropriety.

### D. Appellate Sanctions

Finally, Seifman asks us to impose sanctions on Guzall for filing this appeal. We have discretion to impose sanctions if we determine that an appeal is frivolous. *See* Fed. R. App. P. 38. But Rule 38 only allows sanctions "after a separately filed motion or notice from the court and reasonable opportunity to respond." *Id.* Seifman did not file a separate motion for sanctions, so we decline to award sanctions against Guzall. Nevertheless, we rebuke Guzall for his persistent

and unprofessional attacks on Seifman, the magistrate judge, the district court judge, the district court judge's legal assistant, the Financial Clerk at the district court, and, finally, the Sixth Circuit panel that decided the prior appeal.

Guzall has been filing misleading and abusive briefing relevant to this case in both this Circuit and in the Michigan courts for years. *See, e.g.*, *Guzall III v. Warren*, No. 18-000343-CB, 2018 WL 9991250, at *11 (Mich. Cir. Ct. June 15, 2018) (imposing sanctions on Guzall where Guzall "attempt[ed] to re-litigate an issue that the Court of Appeals ha[d] affirmed" and where "[i]t appear[ed] that the purpose of the instant lawsuit [was] to harass Seifman and [was] devoid of arguable legal merit."). Before this panel, he lodged outlandish accusations of fraud and bias with inflammatory language throughout his briefing. *See, e.g.*, Appellant Br. at 32 ("Because one could conclude Magistrate Whalen's Report made every attempt to avoid the law, to the point of making up the law and facts when the law and facts could not be avoided to favor Seifman's position . . . ."); *id.* at 36 ("The trial court's intimation [through a 'documented false statement'] . . . further illustrates the improper bias for Seifman and against Hankins and Guzall."); *id.* at 38 ("Attorney Warren's . . . email also illustrates the scheme and fraud as Seifman attempted to dupe and defraud the Clerk and Court again . . . ."); *id.* at 44 ("Seifman's . . . order was thus a purposefully and knowingly attempt to defraud the Financial Clerk and the Court in attempt to pilfer more funds."); *id.* at 45 (" . . . places Seifman's fraud well over the top."); *id.* at 46 ("So for the Magistrate to claim that despite his clear order Guzall was supposed to have magically understood . . . may also be concluded to be a sham argument, an improper attempt to cover and deprive Guzall of his rights . . . .").

A brief is not the appropriate place for Guzall to air his grievances against his former law partner. Regardless of Guzall's personal animus, there is no good reason to use the limited space

in his brief to hurl insults. As we have noted before, "[c]areful research and cogent reasoning, not aspersions, are the proper tools of our trade." *Bearden v. Ballad Health*, 967 F.3d 513, 519 (6th Cir. 2020) (citation omitted). Not only is derogatory language unpersuasive, but it also violates the expectation that members of the bar will accord due respect to those involved in the judicial process. *See Bennett v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 584, 585 (6th Cir. 2013); 6th Cir. R. 46. Moreover, an attorney should not waste this Court's resources as part of a personal vendetta in the wake of a soured business relationship. *See* Fed. R. Civ. P. 11(b)(1); Fed. R. App. P. 38.

That is not to say that a lawyer should not be a forceful and passionate advocate for a client. "But just as one cannot 'equate contempt with courage or insults with independence,' we cannot dismiss the disparaging statements in this case as mere stylistic flourishes or vigorous advocacy." *Bearden*, 967 F.3d at 519 (quoting *Sacher v. United States*, 314 U.S. 1, 14 (1952)). If Guzall appears before this Court again, we expect him to conform his conduct accordingly.

**III.**

For the foregoing reasons, we **AFFIRM** the district court's judgment.