**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0397n.06

**Case No. 09-5217**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 13, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MICHAEL DOHERTY; ALAN HOLMES; LOCAL 4053, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, | ) ) ) ) | |
| Plaintiffs-Appellees, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| CITY OF MARYVILLE, | ) ) | |
| Defendant-Appellant, | ) ) | |
| GREGORY MCCLAIN, individually and in his official capacity, | ) ) ) | |
| Defendant. | ) ) | |

**BEFORE:  BATCHELDER, Chief Judge; ROGERS and KETHLEDGE, Circuit Judges.**

**ALICE M. BATCHELDER, Chief Judge.**  Plaintiffs-Appellees Michael Doherty, Alan

Holmes, and Local 4053 International Association of Firefighters ("Local 4053") (collectively,

"Plaintiffs") filed this suit in federal district court alleging that the City of Maryville ("the City")

violated their First and Fourteenth Amendment rights to free speech and free association.  The City

filed a motion for summary judgment, which the district court denied.  At the close of the Plaintiffs'

evidence, the City filed a motion for judgment as a matter of law, which the district court also

denied.  The jury returned a verdict in favor of the Plaintiffs.  The City now appeals, challenging the

district court's denial of summary judgment or, in the alternative, its denial of the City's motion for

judgment as a matter of law. Because the Plaintiffs were not engaged in any constitutionally-protected activity, we REVERSE.

**I.**

This case arises from events transpiring when the Plaintiffs contracted with FireCo, LLC ("FireCo"), a third-party telemarketing organization, to assist in raising funds by selling tickets to an oldies benefit concert. Doherty and Holmes, who are employed as firefighters with the City, signed a services agreement on behalf of Local 4053 in their respective capacities as President and Treasurer. FireCo fundraisers sold tickets to the benefit concert by calling local residents and businesses, identifying themselves as callers acting on behalf of Local 4053, and explaining that the purpose of the ticket sales was to raise money for the association and its activities. FireCo fundraisers agreed to follow a script during their calls. After all expenses were paid, Local 4053 and FireCo split the remaining funds equally. Local 4053 used its share of the proceeds to support the gamut of its activities, from local fire education efforts to bolstering union membership.

Shortly after the telephone sales calls began, the City began receiving complaints from its citizens regarding the calls. Citizens complained that callers were pushy, rude, abrasive, harassing, misleading, confusing, and unprofessional. Some citizens reported that the callers used profanity, and many citizens believed that it was actually the City or the City's fire department that was placing the sales calls. Citizens also complained that the callers threatened that if they did not buy tickets,

"fire hydrants would be turned on their homes,"[1] Dalmatian puppies would starve, and firefighters would have to come to citizens' homes for dinner.

On August 9, 2005, Doherty was called to a meeting about the complaint calls with various city and fire department officials, including Gary Hensley (Maryville City Manager at that time) and Gregory McClain (Deputy City Manager at that time). Doherty was called to the meeting because the City knew that he was the president of Local 4053 and was the person responsible for the contract with FireCo. When Doherty informed the officials at the meeting that Holmes had also signed the contract, Holmes was called into the meeting. Hensley told Doherty and Holmes that the City had received complaints from citizens regarding FireCo's fundraising efforts. Hensley warned that if the complaints did not stop, Doherty and Holmes would be fired. Doherty asked for details about the complaints, including the callers' names, so that Local 4053 could investigate the complaints, but Hensley provided no details. The City never instructed the Plaintiffs to cease the telephone campaign altogether, but only to remedy the problem with the callers.

After the August 9, 2005, meeting, Doherty suspended FireCo's fundraising efforts. About a month later, Doherty signed a new agreement with FireCo on behalf of Local 4053 and resumed the telephone calling campaign. Holmes did not sign this second agreement. The script used for calls under this second agreement was modified from the original script in an effort to address the City's concerns.

---

[1] While it is not clear to us what it would mean for a fire hydrant to be "turned on a home," citizens claimed that this was something that FireCo callers threatened would happen.

3

From August 5, 2005, through August 28, 2006, the City received six complaint calls regarding FireCo's fundraising efforts on behalf of Local 4053. Each of the calls was documented, but no city official contacted Doherty, Holmes, or Local 4053 regarding the complaints until August 28, 2006, when McClain confronted Holmes with a tape recording of one of FireCo's calls. The recording reveals that the caller stated that he was "with the Maryville Fire Fighters" and that after the person who answered the phone hung up, the caller stated "F— you."[2] Holmes told Doherty about the tape recording, and Doherty once again instructed FireCo to cease all fundraising activities on Local 4053's behalf.

On September 5, 2006, city officials met with Doherty regarding the tape recording. McClain, who had since been promoted to City Manager, reiterated that Doherty was subject to termination because of the continued complaints from citizens. A second meeting was held on September 15, 2006, and McClain again threatened to discipline Doherty if the complaints persisted. McClain did not tell Doherty that he had to stop selling the concert tickets, but he did say that the confusion and complaints from the citizens must stop.

On September 22, 2006, Doherty received a written reprimand which was placed in his permanent personnel folder. Doherty was told that he could not appeal or otherwise challenge the reprimand and that his only recourse was to file a response to be placed in the folder with the reprimand. Neither Doherty nor Holmes lost his job, received a pay cut, was forced to work a

---

[2]Apparently, the voicemail machine had picked up before the person answered the phone, and the voicemail machine continued recording after the person hung up.

different shift, or incurred any out-of-pocket expenses as a result of the City's response to the complaint calls.

During the period that FireCo engaged in fundraising efforts on Local 4053's behalf, Maryville Fire Department's delivery of fire services to the community continued as it always had, and Doherty and Holmes continued to perform their firefighting duties without disruption.

The Plaintiffs filed this suit in federal district court alleging that the City violated their First and Fourteenth Amendment rights to free speech and free association. The City filed a motion for summary judgment. The district court denied the motion in part but granted it in part by dismissing the Plaintiffs' claim that Local 4053's free speech rights had been violated. Three days later, on the first day of trial, after an oral motion by the Plaintiffs, the district court reversed its ruling and reinstated the claim by Local 4053.

At the close of the Plaintiffs' presentation of evidence, the City moved for judgment as a matter of law. The district court denied the motion. Following a stipulation to admit an exhibit, the City then rested without calling any witnesses. The City did not renew its motion for judgment as a matter of law after presenting its evidence, nor did it renew its motion after the jury issued its verdict. The jury found in favor of the Plaintiffs and awarded over $90,000 in damages.[3]

The City now appeals, arguing that the district court erred as a matter of law when it denied the City's motion for summary judgment, or in the alternative, when it denied the City's motion for judgment as a matter of law. The City argues that the Plaintiffs were not engaged in a protected activity, that they did not suffer any adverse action, and that any alleged adverse action was not

---

[3]The jury awarded $15,000 to Doherty, $7,500 to Holmes, and $70,000 to Local 4053.

substantially motivated by the Plaintiffs' constitutionally protected conduct. The City also challenges the district court's decision to reverse its partial grant of summary judgment, a decision that the City alleges was unfairly prejudicial.

## II.

The City frames its appeal as challenging the district court's failure to grant summary judgment "and/or" its failure to grant the City's motion for judgment as a matter of law. The Plaintiffs argue that neither issue has been preserved properly for appeal. They claim that a district court's denial of summary judgment is not appealable following a full trial on the merits. *See Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 537 (6th Cir. 2003). They also argue that a motion for judgment as a matter of law is not appealable unless the party renewed the motion both at the close of evidence and after the jury's verdict. The City concedes that it failed to renew its motion for judgment as a matter of law. It argues, however, that (1) a denial of summary judgment is appealable following a full trial on the merits when the question is a purely legal one; and (2) there is no requirement to renew a Rule 50(a) motion when the issue is a purely legal question, rather than a challenge to sufficiency of the evidence.

The City's first argument is now clearly foreclosed in light of the Supreme Court's recent decision in *Ortiz v. Jordan*, 131 S. Ct. 884, 888-89 (2011) (holding that a party may not appeal an order denying summary judgment after a full trial on the merits). Our jurisdiction in this case thus turns on the City's alternative argument, that it did not need to renew its Rule 50(a) motion because the issue involved is a purely legal one.

It is well-established that a Rule 50(a) motion challenging the sufficiency of the evidence is not properly preserved for appeal unless a party renews the motion following the jury verdict per Rule 50(b). *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 400-01 (2006); *Allison v. City of E. Lansing*, 484 F.3d 874, 876 (6th Cir. 2007). In *Unitherm*, 546 U.S. at 396, a party in a civil case appealed an adverse jury verdict, alleging insufficiency of the evidence. Although the appellant had sought judgment as a matter of law pursuant to Rule 50(a), it failed to renew the motion after the verdict. *Id.* The Supreme Court held that the court of appeals could not review the sufficiency of the evidence because the appellant had not preserved the question properly for appeal. *Id.* at 400-06. In order to preserve the question for appeal, the Court explained, the appellant was required to renew its motion per Rule 50(b) after the jury announced its verdict. *Id.* at 407.

The Plaintiffs in this case argue that *Unitherm*'s renewal requirement applies with equal force when an appellant challenges pure questions of law. There is some broad language in *Unitherm* that supports this proposition. *See id.* at 404 ("[T]he precise subject matter of a party's Rule 50(a) motion–namely, its entitlement to judgment as a matter of law–cannot be appealed unless that motion is renewed pursuant to Rule 50(b)."). However, *Unitherm* itself dealt with a sufficiency-of-the-evidence challenge, *id.* at 407, and the cases that enforce its renewal requirement also involve sufficiency-of-the-evidence challenges, *see*, *e.g.*, *Ortiz*, 131 S. Ct. at 892-93; *Allison*, 484 F.3d at 875.

Although this Court has not ruled explicitly on the question, we have suggested that the renewal requirement applies *only* to sufficiency-of-the-evidence challenges and does not apply to challenges raising purely legal questions. *Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 397 n.2 (6th

Cir. 2008) (noting that "ample support exists for [appellant's] interpretation that the Supreme Court's decision in *Unitherm* only addresses pre-verdict motions that are based upon sufficiency of the evidence" (internal quotation marks and citation omitted)). Other circuits have explicitly held that *Unitherm* is limited to sufficiency-of-the-evidence challenges. *See Fuesting v. Zimmer, Inc.*, 448 F.3d 936, 939-41 (7th Cir. 2006) (explaining that *Unitherm*'s rule is limited to sufficiency-of-the-evidence challenges); *Metcalf v. Bocho*, 200 F. App'x 635, 637 n.1 (9th Cir. 2006) (unpublished) ("*Unitherm* . . . deals with the specific situation of a party's failure to renew, post-verdict, a Rule 50 motion challenging the sufficiency of the evidence in a civil jury trial."); *accord* 9A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2540 ("If there have been errors at the trial, duly objected to, dealing with matters other than the sufficiency of the evidence, they may be raised on appeal from the judgment even though there has not been either a renewed motion for judgment as a matter of law or a motion for a new trial . . . .").

Indeed, the rationale behind the renewal requirement supports its limited applicability. In *Unitherm*, 546 U.S. at 401, the Supreme Court explained that,

> A postverdict motion is necessary because determining whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart.

(internal quotation marks omitted). This rationale does not apply to challenges based on pure questions of law. *See Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) ("[W]here the trial court's denial of a summary judgment motion is not based on the sufficiency of the evidence, but on a question of law, the rationale behind Rule 50 does not apply, and the need for such an objection

is absent."). The Supreme Court's decision in *Ortiz* is not to the contrary because the Court explicitly declined to address this question. *See* 131 S. Ct. at 892.

We now make clear that, in this circuit, *Unitherm*'s renewal requirement applies only to the situations that the Supreme Court specifically addressed in that case: challenges to the sufficiency of the evidence. Accordingly, the City's failure to renew its Rule 50 motion following the jury's verdict poses no jurisdictional bar to our review of the purely legal questions raised on appeal.

We now turn to the merits of the appeal.

### III.

We review de novo a district court's denial of a motion for judgment as a matter of law. *Spengler v. Worthington Cyclinders*, 615 F.3d 481, 488 (6th Cir. 2010). "[A] court may grant judgment as a matter of law on a particular issue if 'there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue . . . .'" *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006) (quoting Fed. R. Civ. P. 50(a)(1)). Judgment as a matter of law is appropriate when, "viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).

In order to establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that (1) he engaged in constitutionally protected activity; (2) an adverse action was taken against him by the defendant that would likely chill a person of ordinary firmness from continuing to engage in that constitutionally protected activity; and (3) the adverse action was motivated at least

9

in part by that protected activity. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). This framework applies to claims alleging retaliation for either free speech or free association. *Id.* at 390; *Boals v. Gray*, 775 F.2d 686, 692 (6th Cir. 1985).

The City's primary argument on appeal is that the district court erred as a matter of law when it concluded that the Plaintiffs were engaged in constitutionally protected activity. We agree with the City.

**A.**

A plaintiff alleging retaliation for exercising a constitutional right must first show that he was engaged in constitutionally protected activity. *Thaddeus-X*, 175 F.3d at 395. Because of its special role as an employer, the government is granted some leeway to regulate its employees' speech and association. *See Scarborough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). When a plaintiff is a public employee who is claiming retaliation by his employer (the government) for his speech or his associations, his speech or association is protected only if (1) it touches on a matter of public concern and (2) there is no overriding state interest that would be undermined by the employee's speech or association. *See Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337-38 (6th Cir. 2010). If a public employee's conduct does not involve a matter of public concern, then it is not constitutionally protected, and the court need not evaluate the claim any further. *See Connick v. Myers*, 461 U.S. 138, 146 (1983).

Whether something is a matter of public concern is a question of law. *Id.* at 148 n.7; *Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 574 (6th Cir. 1997). Speech generally involves a matter of public concern when it can "be fairly considered as relating to any matter of

political, social, or other concern to the community," *Connick*, 461 U.S. at 146, as opposed to a matter of private concern such as internal personal disputes or complaints about an employer's performance, *see Brown v. City of Trenton*, 867 F.2d 318, 322 (6th Cir. 1989). "Whether speech [or association] addresses a matter of public concern . . . [is] determined by the content, form, and context of a given statement, as revealed by the whole record." *Chappel*, 131 F.3d at 574 (internal quotation marks and citations omitted). We evaluate several factors to determine whether speech is a matter of public concern, including "the focus of the speech; the point of the speech in question; to what purpose the employee spoke; the intent of the speech; or the communicative purpose of the speaker." *Farhat v. Jopke*, 370 F.3d 580, 592 (6th Cir. 2004) (quotation marks and citation omitted).

**B.**

Applying this framework to the facts of this case, we must first identify the relevant conduct and then analyze whether it touches a matter of public concern. The only activity that is relevant in this case is the Plaintiffs' act of contracting with a third-party telemarketing organization to make fundraising phone calls. In their summary judgment pleadings, the Plaintiffs conceded that they allege retaliation by the City solely because of their involvement with the phone calls. There is absolutely no evidence in the record that the Plaintiffs were targeted because of their membership in the union or because of the union's other community activities.[4] Rather, all the evidence shows that they were targeted because they were in charge of this particular fundraising activity.

---

[4]The only evidence that arguably demonstrates any underlying hostility to Local 4053 is the fire department's alleged refusal to let Local 4053 use the Maryville Fire Department boots in a "fill the boot" campaign for the Muscular Dystrophy Association. Given the myriad reasons that a fire department might decline to loan out its equipment for non-departmental purposes, this "evidence" hardly demonstrates an anti-union bias.

The district court erred by examining a much broader array of activity; it looked at *everything* that the union did in the community,[5] as well as the contract with FireCo and the phone calls that FireCo made. The district court further erred by suggesting that the Plaintiffs may have been disciplined for the positive aspects of the phone calls (as opposed to the threatening and misleading aspects). Local 4053's activity, other than the act of contracting with FireCo, is irrelevant to the retaliation claim at hand.[6]

Having identified the relevant conduct at issue, we now turn to the question of whether it touches on a matter of public concern. The Plaintiffs signed a contract with a telemarketing agency to sell concert tickets. This was a business transaction, and the conduct had a commercial focus. Furthermore, the subject of the contract, making phone calls, was also commercial in nature. Doherty testified at trial that the purpose of the phone calls was to sell a product—tickets to a concert. The act of signing a business contract does not fall within traditional understandings of matters constituting a public concern. *See Connick*, 461 U.S. at 146 (explaining that "expression [that] cannot be fairly considered as relating to any matter of political, social, or other concern to the community" is not a matter of public concern).

The Plaintiffs argue that because the phone calls aimed to raise money for the union's broad activities, some of which are matters of public concern, the act of contracting with a telemarketer

---

[5] These activities included fundraising for various community needs, teaching children and citizens about fire safety, and informing the public about problems facing firefighters and paramedics.

[6] Moreover, even if the district court properly analyzed Local 4053's broad activities, no reasonable jury could find that those other activities were a motivating factor behind the challenged disciplinary conduct; therefore the claim would fail on the third prong of the First Amendment retaliation framework. *See Thaddeus-X*, 175 F.3d at 394 (stating that a plaintiff alleging retaliation must show that the adverse action was motivated at least in part by the protected activity).

to make those phone calls is also a matter of public concern. Even if we were to ignore the attenuated nature of the link between the contract and *potential* issues of public concern, the fact that the purpose of the FireCo contract was to raise money for union activities does not change the nature of the contract itself. "[A]n employee's speech, activity, or association, merely because it is union-related, does not touch on a matter of public concern as a matter of law." *Boals*, 775 F.2d at 693; *cf. Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 68 (1983) ("[A]dvertising which links a product to a current public debate is not thereby entitled to the constitutional protection afforded noncommercial speech." (internal quotation marks and citation omitted)).[7] Similarly, FireCo's passing references during the calls to some of the union's protected activities do not transform the nature of the calls (much less the contract to make the calls). We have held that "the proper inquiry is *not* what might be incidentally conveyed by the speech, and that passing or fleeting references to an arguably public matter do not elevate the speech to a matter of public concern where the focus or point of the speech advances only a private interest." *Farhat*, 370 F.3d at 592-93 (internal quotation marks omitted). The Plaintiffs urge us to adopt a rule that would extend automatic First Amendment protection to activities tangentially related to matters of public concern. We decline their invitation to inflate the First Amendment into an amorphous and unbounded source of protection.

As a matter of law, the conduct in question — i.e., the act of contracting with a third party to make telemarketing calls — did not touch on a matter of public concern. The fact that FireCo

---

[7] The distinction between the First Amendment protection afforded to commercial speech versus non-commercial speech is well-settled. *See Central Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562-63 (1980) ("The Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression.").

callers made incidental, fleeting references to the purpose behind the concert does not change the overall character of the Plaintiffs' conduct. Our inquiry therefore ends here, and we need not determine whether an overriding state interest would be undermined by the Plaintiffs' activity.[8]

## IV.

Because the Plaintiffs failed to establish a prima facie case of First Amendment retaliation, we need not address the City's other arguments on appeal, and we **REVERSE** the judgment of the district court.

---

[8]Given the complaints and confusion generated by the calls, however, the City could meet its burden of showing that the Plaintiffs' activity undermined a legitimate goal of the City. *See Meyers v. City of Cincinnati*, 934 F.2d 726, 730 (6th Cir. 1991) ("In order to justify a restriction on speech of public concern by a public employee, plaintiff's speech must impair discipline by superiors, have a detrimental impact on close working relationships, undermine a legitimate goal or mission of the employer, impede the performance of the speaker's duties, or impair harmony among co-workers.").

ROGERS, J., concurring. I concur in the result and in all but Part III.B of the majority opinion. It is not clear to me that contracting with others to make fundraising calls is categorically not protected under the First Amendment. However, reversal is required because the City's interest in efficient governance outweighed the plaintiffs' interest in conducting fundraising activities via telemarketing.

The action in question is not only the plaintiffs' signing of a contract with FireCo, but also includes the content of the calls made under that contract. The content of the calls is what, after all, prompted city officials to meet with the plaintiffs and demand that all confusion resulting from the calls cease. In *Cockrel v. Shelby County School District*, 270 F.3d 1036, 1048-50 (6th Cir. 2001), by comparison, we held that a teacher who was sanctioned for the content of a classroom presentation had engaged in speech in spite of the fact that she did not deliver the presentation. Further, whether the activity is the contracting or the content of the calls, the activity was arguably within the category of protected speech by virtue of being unrelated to government employment and made on the employees' own time. *See Scarbrough v. Morgan Cty Bd. of Educ.*, 470 F.3d 250, 256-57 (6th Cir. 2006).

Reversal is warranted at the second step of *Pickering* balancing, however, because the plaintiffs' interest in engaging in the fundraising campaign did not outweigh the City's interest in promoting efficient public services and preserving the reputation of city government. *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 568 (1968). The City had to devote personnel hours to responding to complaints and confusion resulting from the calls, and the plaintiffs were either unable or unwilling to resolve the confusion through a revised call

script or alternative campaign.  Therefore, reversal is appropriate on the grounds that the plaintiffs'

interest in conducting fundraising in this manner did not outweigh the City's interest in efficient use

of government resources or in preserving its municipal reputation.