NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0052n.06

No. 16-3333

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOSEPH HINES, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Jan 20, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| CITY OF COLUMBUS, OHIO; DEBRA PAXTON; | ) | |
| THOMAS DEWITT; EDWARD PRIME, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Defendants-Appellees, | ) | COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| and | ) | OHIO |
| | ) | |
| KIMBERLY JACOBS; RICHARD BASH; | ) | |
| CHRISTOPHER BOWLING; LUELLEN | ) | |
| KUYKENDOLL; JAMES MORROW; PATRICK | ) | |
| SHAFFER; EARL WESTFALL; IAN PRUITT, | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE: SUHRHEINRICH, SUTTON, and McKEAGUE, Circuit Judges.

SUHRHEINRICH, Circuit Judge. Plaintiff Joseph Hines (Plaintiff) seeks a new trial following a jury verdict in this civil rights action alleging excessive use of force by several City of Columbus, Ohio police officers. He also challenges the district court's reduction of his attorneys' fees award.

**I.**

On August 29, 2012, at about 11:45 p.m., several Columbus police officers, including Defendants-Appellees Debra Paxton (Paxton), Thomas DeWitt (DeWitt), and Edward Prime

(Prime) (collectively Defendants), arrested Plaintiff for littering and underage drinking.[1] The officers used force in arresting Plaintiff, causing injuries, which included post-concussive syndrome with contusions on his face, chemosis of his eyes from mace, and post-traumatic stress disorder. Plaintiff incurred $10,303.00 in medical bills.

In his amended complaint, Plaintiff brought excessive force and § 1983 conspiracy claims against five Columbus police officers and failure-to-intervene claims against three of those officers. The district court dismissed the excessive force claims against two of the officers, granted summary judgment to all five officers on the conspiracy claims, and dismissed a failure-to-intervene claim against one of the officers. Three officers—Defendants—were tried by jury on the remaining excessive force and failure-to-intervene claims.

Without objection from Plaintiff, the district court granted Paxton's motion for judgment as a matter of law on the excessive force claim. The jury awarded Plaintiff $30,000 in compensatory damages on his excessive force claim against DeWitt and denied punitive damage against him. They found in favor of Prime on the excessive force claim. The jury found in favor of Paxton and DeWitt on the failure-to-intervene claims.

After the district court entered judgment, Plaintiff's attorneys filed petitions for attorneys' fees and costs. Plaintiff sought fees and costs totaling $91,342.05 to the law firm of David A. Goldstein Co., L.P.A. (the Goldstein Firm), of Columbus, Ohio, and $211,600.43 to the law firm of Fieger, Fieger, Kenney & Harrington, P.C. (the Fieger Firm) of Detroit, Michigan, for a grand total award of $302,942.48. Observing that this amount was "more than ten times the jury's damages award" of $30,000, the district court reduced it to "a more reasonable amount." ID# 3109-10. The district court adjusted the rates the Fieger Firm requested to align with rates

---

[1] Plaintiff was charged with various offenses including resisting arrest and causing harm to a law enforcement officer, obstructing official business, underage intoxication, and an open container violation. Plaintiff pleaded guilty to the littering charges and the others were dismissed. ID# 746-47.

reported in the Ohio State Bar Association Report, *The Economics of Law Practice in Ohio in 2013*, *available at* https://www.ohiobar.org/NewsAndPublications/Documents/OSBA_EconOf LawPracticeOhio.pdf. and charged by local counsel, David Goldstein, ID# 3113-15, and red-lined "specific instances of unreasonable hours billed." ID# 3115-18. Except for 1.5 hours, the district court did not reduce the Goldstein Firm's requested rates or hours. The district court further reduced the lodestar amount of both sets of attorneys' fees requests by 50% to reflect the "minimal" degree of success obtained. ID# 3118-21. Thus, the Fieger Firm's attorneys' fees were reduced from $176,075.00 to $39,878.80, and its costs were cut from $35,525.43 to $13,077.04. Similarly, the court reduced the Goldstein Firm's attorneys' fees from $89,360.00 to $44,997.00, but did not reduce its costs. ID#3126.

On appeal, Plaintiff contends that he was denied a fair trial and is entitled to a new one because the district court (1) erred in denying his *Batson* challenge during jury selection; and (2) improperly denigrated his counsel and his case through comments and unfavorable evidentiary rulings. Plaintiff also argues that the 50% across-the-board reduction of attorneys' fees and costs was unreasonable.

## II.

### A.

Initially we consider Defendants' contention that Plaintiff forfeited his new trial issues because he failed to move for either judgment as a matter of law pursuant to Fed. R. Civ. P. 50 or a new trial pursuant to Fed. R. Civ. P. 59.[2]

---

[2]Seeking such relief would have been futile anyway. The material issues in this case involved conflicting witness testimony, which "lies at the core of the jury's factfinding function." 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 2527 (3d ed. & Supp. 2016). "A testimonial conflict of this kind can be resolved only by the jury; this basic principle prevents the grant of a motion for judgment as a matter of law under Rule 50(a) . . . ." *Id.*

"Rule 50 is meant to preserve the judge's power to determine evidentiary sufficiency" and does not govern pure questions of law like evidentiary challenges. *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 161 (4th Cir. 2012). Purely legal questions, "as long as they are properly preserved, may be considered on appeal," in the absence of a Rule 50 motion. *Id.*; *Chemetall GMBH v. ZR Energy, Inc.,* 320 F.3d 714, 720 (7th Cir. 2003); 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2540 (3d ed. 2014 & Supp. 2016) (stating that "[i]f there have been errors at the trial, duly objected to, dealing with matters other than the sufficiency of the evidence, they may be raised on appeal from the judgment even though there has not been either a renewed motion for judgment as a matter of law or a motion for a new trial"). Relatedly, the renewal requirement of Rule 50(b) applies only to challenges to the sufficiency of the evidence. *Doherty v. City of Maryville*, 431 F. App'x 381, 385-86 (6th Cir. 2011). Furthermore, a Rule 59 motion is not a prerequisite to appellate review of contested rulings that were preserved in the trial court. *Howe v. City of Akron*, 801 F.3d 718, 750 (6th Cir. 2015) (quoting 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2818 (3d ed. 2015)). This argument is without merit.

B.

Plaintiff, who is African American, complains that the district court erred in denying his *Batson*[3] challenge because Defendants did not offer a race-neutral explanation for excluding one of the African-American jurors. "The 'Constitution forbids striking even a single prospective juror for a discriminatory purpose.'" *Foster v. Chatman*, 136 S. Ct. 1737, 1747 (2016) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008)). *Batson* set up a three-step process for determining whether a juror has been struck for a discriminatory purpose. First, the party

---

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986). *Batson* challenges apply in civil litigation. *Edmonson v. Leesville Concrete Co. Inc.*, 500 U.S. 614, 616, 629 (1991).

asserting the *Batson* violation must make a prima facie showing that a peremptory challenge is based on race. If that showing is made, the party who exercised the strike must offer a race-neutral explanation. That explanation need not rise to the level of a challenge for cause, but instead need only be a plausible, race-neutral reason for peremptorily striking the juror. *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995). Third, the trial court must determine whether the opposing party has shown purposeful discrimination. *Foster*, 514 U.S. at 1747.

Defendants exercised their first peremptory challenge to remove Juror #78, an African American. ID# 3100. Plaintiff did not contemporaneously object to Juror #78's removal. However, when Defendants used their third peremptory challenge to strike Juror #37, also an African American, Plaintiff argued that Defendants were "systematically excusing members of ethnicity. The first excused was somebody of African-American descent. . . . And the individual that he has just proposed to be excused, Number 37, is African-American." ID# 3102. Plaintiff noted again that "Two of the three preemptories were African-American challenges." ID# 3103. Later he reiterated that "there were only two African-Americans in the entire venire, and the defense has struck them both. And with a Batson objection, I'm arguing that, one; they can't do this because they're systematically excluding African-Americans." ID# 3105. In response, the district court said, "Well, they have excused one without any objection. And, okay, go ahead now. Do you wish to respond, Mr. Mangan [counsel for Defendants]?" ID# 3105. At that point, defense counsel offered a race-neutral explanation for striking Juror #37, ID# 3105-06, which the district court accepted, and then overruled the objection. Plaintiff does not challenge this ruling on appeal. *See* Appellant's Br. at 27 n.8.; Reply Br. at 3. However, defense counsel did not offer any explanation for peremptorily striking Juror #78, the district court did not ask defense counsel to give one, and Plaintiff did not insist that defense counsel provide one. The question

on appeal is whether Plaintiff can assert a *Batson* challenge regarding Juror #78 where Plaintiff did not make a *Batson* challenge when Juror #78 was peremptorily dismissed, but before any perceptible "pattern" of race-based challenges had emerged.

Plaintiff's *Batson* challenge regarding Juror #78 was timely under our precedent. In *United States v. Tomlinson*, we held that "a strictly contemporaneous objection is not required and that a party's *Batson* objection is timely if it is made before the jury is sworn and the trial commences." *Tomlinson*, 764 F.3d 535, 537 (6th Cir. 2014); *see also United States v. Reid*, 764 F.3d 528, 533 (6th Cir. 2014) (holding that "a *Batson* challenge must be raised contemporaneously with the voir dire process or prior to the time that the venire is dismissed"). Plaintiff timely made the *Batson* challenge regarding Juror #78 as soon as he perceived what he thought to be "a pattern of strikes against African American jurors." *See Tomlinson*, 764 F.3d at 538.

Nonetheless, because Plaintiff failed to demand that defense counsel give a race-neutral explanation for peremptorily striking Juror #78 once Plaintiff perceived a pattern, he forfeited his right to seek one for the first time on appeal. Plaintiff's counsel was a highly experienced trial attorney who did not hesitate when it came to making a record for appeal on other matters. *See, e.g.*, ID# 2168-70, 2436-37. Yet he inexplicably made no effort to have the district court follow the second and third *Batson* steps to ensure a proper record for appeal as to Juror #78.[4] While

---

[4] The record reflects why Plaintiff's counsel probably did not pursue his *Batson* challenge as to Juror # 78 below. In her jury questionnaire, Juror #78 indicated that she had been involved in a personal injury lawsuit, yet when the district court inquired of the venire whether anyone had been involved in any lawsuits, she did not raise her hand. She explained that "It completely escaped my mind." ID# 3091. She also stated at a sidebar that the city attorney had charged her husband with domestic violence in 2012 or 2103. ID# 3092-93. She explained that she forgot to mention the incident during the trial court's questioning, because she was "kind of in a fog" that morning due to her diabetes and failure to eat that morning. ID# 3093. In addition, although she did not know him, her son had been represented in a personal injury lawsuit in 2013 by attorney Fred Benton, one of the Plaintiff's defense attorneys in the criminal case arising out of the same incident. ID# 1216, 1239-40, 1263-64, 3093-94 Furthermore, she also failed to mention when asked about contacts with the City Attorney's Office that she was criminally charged by that office for passing bad checks in 1992, because she didn't remember. ID# 3094-95.

not exactly "invited error," Plaintiff should not be allowed to use the appellate process "to profit from the legal consequences of having the ruling set aside" when he could have corrected the error contemporaneously. *In re Bayer Healthcare & Merial Ltd. Flea Control Prods. Mktg. & Sales Litig.*, 752 F.3d 1065, 1072 (6th Cir. 2014) (quoting *Harvis v. Roadway Exp., Inc.*, 923 F.2d 59, 61 (6th Cir. 1991)). Thus, we hold that although Plaintiff properly raised the *Batson* issue with respect to Juror #78 once the purported pattern of race-based peremptory challenges occurred (even though the challenge was not made at the time Juror #78 was struck), Plaintiff failed to make a record in the district court sufficient to preserve the issue for appeal.

## C.

Plaintiff asserts that the district court's comments and rulings "improperly and unnecessarily denigrated Plaintiff's counsel," depriving him of a fair trial. Appellant's Br. at 30.

### 1.

Plaintiff claims on appeal that the district court "repeatedly and unnecessarily chastised Plaintiff's counsel, often in the presence of the jury." Appellant's Br. at 31.

We typically review a district court's conduct during a trial for abuse of discretion. *United States v. McAllister*, 693 F.3d 572, 584 (6th Cir. 2012). Plaintiff did not seek to recuse the district judge and did not object at trial to the district court's allegedly objectionable statements. We therefore review the district court's conduct simply for plain error. *Id.* Plain error requires Plaintiff to "show (1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

Plaintiff offers only four examples of alleged bias.[5]  But none of these isolated comments were anything more than "ordinary efforts at courtroom administration."  *Liteky v. United States*, 510 U.S. 540, 556 (1994).  At worst, the court displayed irritation with Plaintiff counsel's "habit of arguing with the Court *after* it's made a ruling."  ID# 2381-82 (emphasis added).  Even so, the remark was made outside of the jury's earshot, at a sidebar.  In short, Plaintiff has not shown bias denying him a fair trial.  *Cf. United States v. Hickman*, 592 F.2d 931, 936 (6th Cir. 1979) (bias shown where the trial judge repeatedly interrupted the proceedings in a manner that favored the government).  Consequently, we find no plain error.

2.

Plaintiff further claims that his case was "undermined by [evidentiary] rulings."  Appellant's Br. at 32.  This court reviews a district court's evidentiary rulings for abuse of discretion.  *Burley v. Gagacki*, 834 F.3d 606, 617 (6th Cir. 2016).  A district court abuses its discretion when it relies on clearly erroneous facts, improperly applies the law, employs an erroneous legal standard, or commits a clear error of judgment.  *Id.* (citations omitted).  Even if the district court errs, we will reverse only if the error affected the outcome of the trial.  *Id.* Stated differently, if an evidentiary error did not substantially sway the jury and thus did not materially affect the verdict, reversal is not required.  *Id.* (citations omitted).

On appeal, Plaintiff lists ten examples of allegedly erroneous evidentiary rulings.  *See* Appellant's Br. at 32-36.  None of these rulings are based on clearly erroneous facts or improper application of the law.  Rather, all were routine evidentiary rulings, well within the district court's proper exercise of its discretion in evidentiary matters.

---

[5]These included an admonition against stating the grounds for an objection until asked; a decision to withhold ruling on the admission of Plaintiff's exhibits until the end of the case (in which Plaintiff concurred); irritation with plaintiff counsel's habit of arguing with the court after its ruling; and a direction to avoid using an exemplar without first seeking permission.

First, the district court refused to allow Plaintiff to use a skull during Dr. Shiener's testimony to demonstrate a brain injury. That was not an abuse of discretion. As the court noted, Dr. Shiener "only saw [Plaintiff] for a psychiatric counsel," and the exhibit could have been "confusing and prejudicial" to the jury. ID# 2135.

Second, it was not an abuse of discretion to bar Plaintiff from introducing during Dr. Shiener's redirect examination photographs of Plaintiff's facial abrasions because they were not discussed during direct or cross-examination. *See United States v. Pope*, 335 F. App'x 598, 603 (6th Cir. 2009) (stating that "[t]he tradition in the federal courts has been to limit the scope of redirect examination to the subject matter brought out on cross-examination") (internal quotation marks and citation omitted).

Third, the district court did not err in allowing Dr. Shiener to testify about the metabolizing effects of alcohol in response to questions by defense counsel. Although not a toxicologist, Dr. Shiener is a medical doctor, board-certified in psychiatry with expertise in addiction psychiatry and therefore arguably qualified by education and experience to understand the metabolizing of alcohol. *See* Fed. R. Evid. 702. In any event, his testimony was actually favorable to Plaintiff. *See* ID# 2172-73 ("Q. Now, when we talk about alcohol, based on your knowledge and experience, you know that if a .07 is taken at some point sometime earlier when it actually happened, it would probably be higher because of metabolization, correct? A. No. That's incorrect. We don't know, unless we have two blood alcohol levels spaced apart, whether the blood alcohol level is going up or down. . . . What governs alcohol is how much food is onboard and by the higher concentration. . . . As regards Four Loko, it's around six percent alcohol, and it's possible, even likely, that the alcohol was in his stomach, and his blood alcohol level kept going up after this incident.").

Fourth, the testimony of Plaintiff's friend Anthony Clark regarding Plaintiff's use of marijuana and related troubles in 2011 was relevant to challenge Dr. Shiener's opinion that Plaintiff suffered cognitive and mood impairment due to a secondary traumatic brain injury caused by the incident. *See* ID# 2152. Plaintiff had downplayed his marijuana usage to Dr. Shiener and told him that he had never been in trouble with the police. ID# 2167-68. As the district court observed, heavy marijuana usage could be relevant to Dr. Shiener's diagnosis of his alleged disabilities. ID# 2380-81. *See* Fed. R. Evid. 403. And Plaintiff testified later in the trial that he had smoked marijuana. ID# 2546. Defendants' failure to obtain FBI Agent Latisha Hartsough's testimony about Clark's prior inconsistent statements concerning Plaintiff's marijuana usage and related trouble became unnecessary when Clark admitted that Plaintiff had gotten into trouble in 2011 for possessing marijuana. ID# 2383.

Fifth, the district court did not abuse its discretion in telling Plaintiff's counsel to "move things along" during the direct examination of Plaintiff, when counsel was attempting to elicit testimony on such irrelevant topics as Plaintiff's parents' jobs, his college application process, and his roommates' majors. *See* ID# 2492-2501. Even if it wasn't entirely irrelevant, any probative value of the testimony was substantially outweighed by considerations of undue delay or waste of time and was therefore within the district court's discretion. *See* Fed. R. Evid. 403.

Sixth, the district court properly prohibited Plaintiff from asking defense witness Columbus Police Officer Thomas Page (Page) to offer an opinion as to the appropriateness of the degree of force used on Plaintiff. Page was called as a fact witness to explain the officer's training and was not disclosed as an expert witness. *See* ID# 2734, 2773. Moreover, from the record it appears that Plaintiff was attempting to suggest that Page was not asked to provide an opinion regarding Defendants' use of force because Page found it *unreasonable*. *See* ID# 2773

("Q. You don't have any opinions as to whether or not the force used on [Plaintiff] was appropriate, correct? A. Well – [Defense counsel]: Objection. THE COURT: Sustained."). Allowing such testimony would have confused the jury and unfairly prejudiced Defendants, and was therefore properly excluded under Fed. R. Evid. 403.

Seventh, the district court correctly stopped Plaintiff's counsel from asking Page on cross-examination about a Department of Justice review of the City of Columbus's police department records, because Plaintiff was referring to an unrelated 1999 lawsuit involving the United States and the City of Columbus that had nothing to do with the City's striking training. ID# 2801-02.

Eighth, the district court properly limited Plaintiff from asking Defendant Paxton on cross-examination about her Action Response Report until Plaintiff had elicited inconsistent statements from the witness. *See* ID# 2277-82. Plaintiff also complains that the district court sustained Defendants' objection to his question to Defendant Paxton that she was asked to be interviewed by the FBI after the incident at issue. ID# 2276-77. On appeal Plaintiff suggests that he was attempting to show that Paxton had invoked her Fifth Amendment rights. Appellant's Br. at 35. However, he told the district court merely that it was "relevant because she didn't give a statement to the FBI, but all the witnesses did." ID# 2777. In any event, the probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues.

Ninth, the district court properly allowed Defendants to impeach Clark with statements he made to FBI Agent Hartsough. *See* ID# 2726-28. The record reflects that this questioning was properly done under Fed. R. Evid. 613(b).

Tenth, Plaintiff's questioning of Blair Patmon on redirect examination went beyond the scope of cross-examination. Thus, the district court did not abuse its discretion in excluding it. ID# 2011.

Furthermore, Plaintiff fails to explain *how or why* these allegedly erroneous rulings, viewed individually or cumulatively, materially affected the jury's verdict so as to warrant a new trial. This court has consistently held that "[a] party may not raise an issue on appeal by mentioning it in the most skeletal way, leaving the court to put flesh on its bones." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016)). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Id.* (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). In fact, we do not see how any of these rulings could have had a materially adverse impact on Plaintiff's case and find no abuse of discretion.

D.

Plaintiff challenges the district court's significant reduction of his requested attorney's fees and costs. We review the court's ruling for abuse of discretion. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). We give considerable deference to the district court, in light of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

1.

Plaintiff argues that the district court's 50% across-the-board reduction of the lodestar after already reducing the Fieger Firm's attorney's fees by 136.2 hours and its hourly rates by an average of 36% was an abuse of discretion. Initially, Plaintiff suggests that the district court's

"animus" against the "out-of-forum" Fieger Firm is the reason for the significant reduction in fees. However, the record reflects that the district court simply applied the well-established rule in this circuit that renown alone is not compensable under fee-shifting statutes, *see Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), *abrogated on other grounds by Ne. Ohio Coal. for the Homeless (NEOCH) v. Husted*, 831 F.3d 686 (6th Cir. 2016), and that there was no special need for the Fieger Firm "because local counsel, Mr. Goldstein, could have tried this case." ID# 3118. *See NEOCH*, 831 F.3d at 716 (stating that "the mere fact that a particular attorney has a national reputation for expertise in the relevant kind of litigation does not constitute proof that the attorney's expertise was necessary to the litigation") (internal quotation marks, brackets, and citation omitted). Plaintiff claims that Harrington and Goldstein "took a team approach to this litigation," pointing out that Harrington conducted voir dire, gave opening statements and closing arguments, and handled most of the witness examinations. Appellant's Br. at 37-38. But Plaintiff does not dispute the district court's finding that Goldstein "did most of the work in discovery and examined witnesses at trial," ID# 3118, or its finding that "Mr. Harrington's trial preparation was excessive, possibly the result of his lack of involvement in the case until after the summary-judgment stage." ID# 3117. Plaintiff has failed to show that the district court's rulings were animated by out-of-forum animus rather than application of settled law in this circuit regarding out-of-town counsel. *See NEOCH*, 831 F.3d at 716; *Hadix v. Johnson*, 65 F.3d 532, 535-36 (6th Cir. 1995); *Coulter*, 805 F.2d at 149; *see generally McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 494 (6th Cir. 2014) (stating that court of appeals must "be mindful of the trial court's ring-side view of the proceedings").

Insisting that "the verdict is against the great weight of the evidence" and that "the evidence supported a much larger verdict," Plaintiff claims that the district court wrongly

focused on the amount of the verdict. Appellant's Br. at 47. The district court observed that Plaintiff's overall relief "was slight in relation to the hours expended on the litigation," noting that Plaintiff "prevailed on only one of his many claims against only one of the five officers he sued." ID# 3120. The court compared the size of the jury verdict ($30,000) to Plaintiff's last settlement demand ($5,000,000), and Defendants' last settlement offer ($10,000). *Id.* The verdict was .6% of what Plaintiff asked for, and the requested attorneys' fees were ten times that amount. *Id.*

The district court did exactly what *Hensley* requires—it looked to the degree of success obtained. *See Hensley*, 461 U.S. at 434-36 (holding that the lodestar calculation "does not end the inquiry," and that the court also must look to "other considerations," including "the important factor of the 'results obtained'"). "[T]he most critical factor is the degree of success obtained." *Id*. at 436. Indeed, a trial court abuses its discretion when it does *not* consider the relationship between the fee awarded and the success obtained. *See Dean v. F.P. Allega Concrete Const. Corp.*, 622 F. App'x 557, 559 (6th Cir. 2015). Considering a rejected settlement offer is one way of measuring the degree of success. *McKelvey*, 768 F.3d at 495 (quoting *Farrar v Hobby*, 506 U.S. 103, 114 (1992)).[6] "Few, if any, reasonable litigants would call a monetary judgment that comes in well under the money offered to settle the case a success." *Id.* Moreover, when a plaintiff achieves limited success, a fee award based on the lodestar calculation may be excessive, even if the claims are interrelated and nonfrivolous. *Hensley*, 461 U.S. at 436.

Plaintiff argues that *McKelvey* is inapposite because it involved an award of attorney's fees under the Fed. R. Civ. P. 68 and not § 1988. This is incorrect. *McKelvey* involved the

---

[6] In *McKelvey*, the focus was on the defendant's settlement offer, which was higher than the jury award. Here, the jury verdict was higher than Defendants' last settlement offer, but not by much. The district court compared the award to Plaintiff's final settlement demand, which we believe is an equally valid measure of lack of success obtained.

award of attorney's fees under 29 U.S.C. § 794a(b) of the Rehabilitation Act of 1973. *See McKelvey*, 768 F.3d at 494. *McKelvey* rejected the argument that the existence of Rule 68 prevents district courts applying fee-shifting statutes from considering rejected settlement offers. *See id.* at 496 (stating that the "overlapping function" of Rule 68 and reductions to the lodestar based on prior settlement offers "does not divest district courts of discretion to consider those offers when setting a reasonable attorney's fee under § 794a(b) and other similar fee-shifting statutes that treat fees as part of costs"). Plaintiff also gets it wrong when he claims that *McKelvey* "never analyzed § 1988 and never cited *Hensley*." Appellant's Br. at 48.[7] *McKelvey* cites *Hensley*, the seminal case on attorney's fees under 42 U.S.C. § 1988, for its key proposition that "'the most critical factor' to a reasonable fee 'is the degree of success obtained.'" *McKelvey*, 768 F.3d at 495 (quoting *Hensley*, 461 U.S. at 436) (alteration omitted). *McKelvey*'s reliance on *Hensley* is not remarkable since, as *McKelvey* obviously recognized, the two statutes contain virtually identical language. *Compare* § 794a(b) (stating that under the Rehabilitation Act "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs"), *with* § 1988(b) (stating that under § 1983 and similar statutes "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs").

Plaintiff asserts that this case in analogous to *DiLaura v. Township of Ann Arbor*, 471 F.3d 666 (6th Cir. 2006), where the district court reduced by 60% the requested attorneys' fee award because the plaintiffs ultimately prevailed on only one of their claims. *Id.* at 669. We held that was an abuse of discretion because the case involved a common core of facts. *Id.* at 672-73. The lower court therefore erred in treating the various claims as distinct, reducing the

---

[7] Plaintiff also points out that *McKelvey* did not cite *Perdue v. Kenny A ex rel. Winn*, 559 U.S. 542 (2010). But in *Perdue* the Supreme Court was troubled by the district court's failure to properly justify why it had increased the requested fees by 75 percent rather than by some other arbitrary figure. *Id.* at 557.

fees based on a strict win-loss ratio, in violation of *Hensley*. *See id.* at 673. Although the district court in this case remarked that Plaintiff "fail[ed] to prevail" on unrelated claims, and "remain[ed] mindful" that Plaintiff succeeded on only one claim, it nonetheless focused on the significance of the overall relief obtained rather than dividing hours, in part because the billing statements made it difficult to divide the hours expended on a claim-by-claim basis. ID# 3119-20.

In essence, Plaintiff is claiming that because the jury *should have* returned a higher damages award, the district court *should not have* used that amount in assessing the degree of success obtained. In other words, he is basically asking us to override the jury's evaluation of the merits of the case—at least to the extent of measuring reasonable attorneys' fees. But credibility determinations, weight to be given the evidence, and inferences to be drawn from the facts are quintessentially jury functions, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and the Supreme Court has told us that the measure of reasonable attorneys' fees goes hand-in-hand with the damages award, *see Hensley*, 461 U.S. at 435-36. We decline to circumvent the Court's directive.

Second, Plaintiff contends that the district court failed to explain adequately its award. *Hensley* also requires that a district court "provide a concise but clear explanation of its reasons for the fee award." *Id.* at 437. The district court did that as well. The district court noted that Plaintiff brought multiple claims against multiple defendants, but prevailed on only one claim against one defendant. Moreover, the monetary relief awarded was slight compared to Plaintiff's projection of the case in his settlement offer. As the district court correctly noted, "although important," the verdict was "only a sliver of the monetary success [Plaintiff] sought

and only slightly more than Defendant offered to settle the case." ID# 3121. The court's analysis easily satisfies *Hensley's* requirement of a "clear but concise explanation."

Plaintiff also claims that the district court did not explain why it chose 50%. *Cf. Perdue v. Kenney A ex rel. Winn*, 559 U.S. 542, 557 (2010). But as the district court explained, Plaintiff's monetary success was "slight," and only a "sliver" of the monetary judgment Plaintiff sought. Nonetheless, the court did not reduce the attorneys' fees award by a commensurate amount.

2.

Plaintiff also objects to the 40% across-the-board reduction of the Fieger Firm's costs. Section 1988 permits the award of "those incidental and necessary expenses incurred in furnishing effective and competent representation." *Ohio Right to Life Soc., Inc.*, v. *Ohio Elections Comm'n*, 590 F. App'x 597, 605 (6th Cir. 2014) (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013)). This includes photocopying, paralegal expenses, and travel and telephone charges. *Id.*

The district court disallowed all expert-witness fees and travel expenses for out-of-town counsel[8] and applied a 40% reduction to the Fieger Firm's remaining bill of costs, after noting that some of the costs appeared excessive; *e.g.*, more than $8,000 in phone and copying costs alone (including $158 for three phone calls, and the Fieger Firm's rates for document reproduction, which included a $920 charge to reproduce exhibits before trial). ID# 3125. The court did not reduce the Goldstein Firm's bill of costs. ID# 3126.

Plaintiff maintains that "out-of-forum" animus also motivated the district court's decision to reduce costs. Appellant's Br. at 53. We reject this argument for a second time. Because the district court found that out-of-forum counsel's efforts were unnecessary, it was not irrational or

---

[8] Plaintiff does not challenge either of these two rulings.

unreasonable to conclude that the associated costs were somewhat duplicative and in the same proportion as the attorneys' fees reduction. *Cf. Coulter*, 805 F.2d at 152 (stating that where duplication, which is difficult to measure, is a problem, the district court may have to make across-the-board reductions by reducing certain items by a percentage figure). Moreover, his appeal brief fails to provide any citations to authority or the record to support his argument. *See* Fed. R. App. P. 28(a)(8)(A) (requiring appellant's brief to provide "contentions and the reasons for them, with citations to authorities and *parts of the record* on which the appellant relies").

## III.

For the foregoing reasons we AFFIRM the district court's entry of judgment and the fees award.